SUSAN FALCON           *      NO. 2024-CA-0113

VERSUS                *

                                 COURT OF APPEAL

CINDY BADINGER       * 

                                 FOURTH CIRCUIT

                    *

                                 STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-12377, DIVISION "G"
Honorable Veronica E. Henry, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)
ATKINS, J., CONCURS IN THE RESULT.

Shermin S. Khan
THE KHAN LAW FIRM
2714 Canal St.
Ste. 300
New Orleans, LA 70119

Lindsey A. Cheek
THE CHEEK LAW FIRM
650 Poydras Street
Suite 2310
New Orleans, LA 70130

      COUNSEL FOR APPELLEE

Darleen M. Jacobs
Hunter Harris, IV
Rene' D. Lovelace
The Law Offices of Darlene M. Jacobs
823 St. Louis Street
New Orleans, LA 70112-3415

      COUNSEL FOR APPELLANT

                                 **REVERSED AND RENDERED.**
                                 **DECEMBER 4, 2024**

Susan Falcon ("Falcon") filed this suit against her next-door neighbor, Cynthia Badinger ("Badinger"). Falcon alleges harassment and seeks an injunction under the anti-stalking statute, La. R.S. 46:2172. The trial court granted the injunction ordering Badinger, among other things, not to go within 100 yards of Falcon or her residence and not to contact any of Falcon's family members or acquaintances. For the reasons that follow below, we reverse and recall the trial court's decision.

*Fact summary*

Falcon and Badinger have been next door neighbors for more than 20 years. Based on the record, it appears that relations between these neighbors have been somewhat contentious for most, if not all, that time. For this reason, it is appropriate to take judicial cognizance of the fact that Badinger was the successful plaintiff in two anti-stalking actions against Falcon's husband and son. We take note of this judicial fact because Falcon's suit was accompanied by a verification by affidavit executed September 27, 2023, just nine days after the Civil District Court for the Parish of Orleans issued an anti-stalking injunction in favor of Badinger and against Falcon's husband, David Kelly Falcon, in docket number 2023-07436 on the docket of Civil District Court for the Parish of Orleans. Falcon's son, David Zeke Falcon, was similarly enjoined by an order of this court

in *Badinger v. Falcon*, 2023-0742 (La. App. 4 Cir. 5/2/24), ___So.3d ___, 2024 WL 1926190.

Falcon alleges that Badinger has "stalked" her by a pattern of harassment that consists of Badinger's complaints to various agencies of the City of New Orleans. Falcon claims that the complaints were without merit.  In addition, Falcon claims that Badinger absconded with the Falcon family cat and hid packages addressed to Falcon.  Badinger denies the allegations regarding the cat and denies that she ever withheld any packages.  She also denies that she made false allegations to any city agency.  Badinger testified that, based on her complaints, the City forced Falcon to remove a camper from her backyard and advised her to file suit for violation of the city building code for failure to maintain a proper setback of a shed in Falcon's backyard.

There are discrepancies between Falcon's testimony and the complaint form she filled out to institute her lawsuit. In particular they are:

- In her petition, Falcon alleges that Badinger "took photos of me without my knowledge." *At trial, she testified that Badinger took pictures of her house, not her person, while she was out of town*.

- In the petition, she alleges that in "2015 and 2016" Badinger "keeps packages misdelivered to her house, but belonging to Falcons." *At trial, she testified regarding a single incident in 2022 in which Badinger did not re-deliver a FedEx package addressed to Falcon but placed on Badinger's porch in error.*  Later that same day the package was delivered to Falcon by a neighbor a block away after Falcon texted Badinger threatening to call police if she didn't deliver the package. The trial court specifically noted that she did not believe Badinger's testimony denying any involvement.  We accept that conclusion by the trial court.

- She alleges that in "2007, 2008," Badinger kept packages addressed to Falcons then threw them in Falcon's yard in the rain.  At trial, *the only evidence regarding packages related to the single 2022 incident*. At that time, Falcon

2

texted Badinger to "just throw the package over the fence."

- The petition claims that Badinger called her after Hurricane Katrina to tell her that there was a tree down in her yard and that there were dead dogs on her lawn. Falcon claims that there were no dead dogs.

- The petition alleges that Badinger filed a complaint that she was keeping "30 chickens and a pack of wild dogs" on her property. *At trial, Falcon produced documents relating to a single complaint to a city agency in which Badinger claimed that Falcon had more than 4 domestic animals in her yard. She had only 4 animals according to testimony.* According to one of the documents submitted, the legal limit for domestic animals in a single residence at the time was four.

- In her petition, Falcon claims that Badinger taunted her dogs to make them bark by dragging a milk carton on the wooden fence between the two yards. When Falcon went out to bring her dogs in the house, she tripped and injured herself badly. She alleges that Badinger was in her yard at the time and did not offer her any help. *At trial, Falcon admitted that she assumed that the person in the neighboring yard was Badinger because she heard her whistling.*

In testimony, Badinger denied many of the allegations made against her. There are no written reasons for judgment; however, in oral reasons, the trial court indicated that she found parts of Badinger's denials less than credible. We accept the trial court's determination regarding Badinger's credibility. In those same comments, the court emphasized her reliance on the complaints to city agencies as a reason for issuing the protective order:

> I'm talking about the repeated pattern in which the defendant is using complaints to various departments of the city with the intent, in this Court's opinion, to harass.

At trial, Falcon gave documentary proof of three complaints by Badinger, two regarding an alleged violation of city building codes (for constructing a roof

3

shed over what she believed was her property line)[1] and one regarding an excessive number (five or more) domestic animals on Falcon's property. Falcon testified that there were 12 complaints made against her property since she became neighbors with Badinger but gave no documentary evidence of those other complaints nor did she give any further details regarding the alleged complaints.[2]

*Analysis*

This case raises three fundamental legal questions:

1. Do complaints made to appropriate legal agencies regarding a neighbor's activities constitute harassment as defined by La. R.S. 14:40.2(C)(1); and, if so,
2. Would 12 complaints over a period of 19 years constitute a pattern of harassment when the last official complaint was 9 years ago?
3. A third included question is whether those complaints can be considered harassment at all when official investigation revealed that the reported party was in violation of municipal ordinances on at least one of the occasions reported.

Falcon's claim is based on the anti-stalking statute, La. R.S. 46:2172, which defines stalking as, "any act that would constitute the crime of stalking under R.S. 14:40.2 or cyberstalking under R.S. 14:40.3." Falcon argues that the complaints to city agencies meet the definition of stalking because it is "harassing" by "sending messages via a third party" as defined by La. R. S. 14:402(C)(1). The trial court's comments show that she accepted that argument. We disagree.

---

[1] At trial, two complaint documents were offered that were dated approximately two years apart in 2012 and 2014. Both complaints related to the roof of a shed on Falcon's property. Badinger submitted a photograph of the shed as evidence that the roof extended beyond what she believed to be the property line, which is marked by a chain link fence. Falcon also proffered one written complaint that was excluded as evidence because there was nothing on the complaint that indicated that Badinger was the complainant. For the purposes of this opinion, we need not rule on that evidentiary matter as explained below.

[2] Falcon also proffered documentary evidence of an additional complaint of a building code violation. The trial court excluded that document from evidence because nothing on the complaint document showed that the complaint was made by Badinger. The complaint alleges that Falcon was demolishing a shed without a work permit. It is more likely than not that the complaint in Proffer 1 was made by Badinger, but, based on our analysis, we do not need to decide whether the document should have been admitted.

City agencies are the social infrastructure that is designed to prevent disagreements that pit neighbor against neighbor in a fashion that might lead to greater discord and possibly to violence. The case now before this court shows how those agencies are working according to this design. These neighbors would more readily meet the definition of adversaries than friends. By their own testimonies, they reveal that they are not capable of the type of communication one would hope would exist between next-door neighbors.

A study of the parties' testimony shows that there are two long-running disputes between the parties.[3]

### *Domestic animals*

One group of complaints relates to the Falcon's ownership of pets, or, as referred to by the city ordinances, domestic animals. Based on the documentary evidence provided, it appears that the Falcons owned two dogs and two chickens during some of their occupancy of their current home. That same evidence shows that residences may not have more than four domestic animals at one time under the zoning ordinances then in effect. Apparently, Badinger was bothered by the number of domestic animals owned by her neighbor and thought that the Falcons owned more than four pets. Falcon testified that she was required to make appearance at City Hall to defend these complaints, however, she offered no proof beyond her testimony. Indeed, the documents she introduced at trial only show that the city's animal control agency instructed her to "call La/SPCA about chickens." According to Falcon's testimony, a representative from the "zoning office" went to her home "without warning" to investigate. At the time (2010) she

---

[3] This analysis does not attempt to determine which party is truthful or correct in these disputes. We accept the trial judge's judgment on that account.

had two hens and two dogs. If she had owned one more animal, she would have been in violation.

***Property lines***

A second group of Badinger's complaints relates to a shed that Falcon constructed very near or over the property line that divides the neighboring properties. According to Badinger's testimony, she built a chain link fence on the property line and later built a wooden "privacy fence" on her side of the property line. She testified that she had the property line surveyed to show that the chain link fence was on the line. Badinger brought no documentary proof of the alleged survey. However, if a fence was built over a neighbor's property line, one should expect that the building will be a source of irritation and an occasional visit by a city official. In any event, asking for the city's assistance in dealing with this issue should not lead to an order of protection, nor should it be considered "harassment" as defined by La. R.S. 14:40.2.

In addition to these two ongoing disputes, the parties both testified that Falcon moved a camper into her backyard in violation of city ordinances. After a complaint by Badinger, she was required to remove it.

There was discussion of other complaints in which the parties offered differing recollections regarding city actions in response. Falcon argues that the only violation was related to the camper, and Badinger alleges that other violations were found. The documentary evidence could be read either way. Neither party produced a witness from any city agency to interpret the cryptically worded documents.

Other than complaints to city agencies, Falcon testified only to three other incidents. Those are enumerated and discussed above.

Badinger also argues that most of the actions contained in Falcon's complaint are prescribed. Indeed, the last time that Badinger made a complaint to the city was in 2015. The complaint regarding the late-delivered FedEx package was the most recent complaint, and that occurred in 2022. Falcon and Badinger both testified that Badinger took photos of the outside of Falcon's home in October 2023. The incident in which Falcon fell in her yard occurred in 2019. The parties agreed that they had fewer than five conversations during the twenty years that they shared a property boundary. Badinger testified, without contradiction, that she had never stepped onto Falcon's property. Neither party suggested that Badinger ever made threatening statements to Falcon.

The statute on which Falcon's complaint is based is intentionally broad. It provides that:

> A. Stalking is the *intentional and repeated* following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include but not be limited to the *intentional and repeated* uninvited presence of the perpetrator at another person's home, workplace, school, or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal, written, or behaviorally implied threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

La. R. S. 14:40.2 (emphasis added). We interpret the statute to be intentionally broad in order to permit the protection of stalking victims from long-term patterns of behavior. The fact that any individual action of a perpetrator may have prescribed should not exclude it as evidence of stalking. By way of example, if a stalker made death threats once a year for ten years then resumed the threats after ten years of inaction, this law should permit consideration of all the threats that had

7

been made. Based on this interpretation, we hold that the argument of prescription is without merit.

As we noted above, complaints to city agencies that are not outlandish and unreasonable should not form the basis of a claim of stalking because they would not "cause a reasonable person to feel alarmed or to suffer emotional distress" as required by the statute. We do not endorse Badinger's actions, however, we interpret the statute to require something more serious than the actions of an annoying neighbor. The statute refers to repeated and uninvited appearance at the victim's home, workplace or school or threats of death, bodily injury, sexual assault, or kidnapping that would cause a reasonable person to be alarmed or suffer emotional distress. While we might agree that Badinger's actions are unfriendly, annoying, or even mean-spirited, they are not sufficient to fulfill the objective standard of causing alarm or emotional distress to a reasonable person.

*Conclusion*

Reviewing the facts of this case, we therefore hold that complaints to appropriate authorities that are not outlandish or unrelated to any substantive factual premise may not be the basis of a restraining order pursuant to La. R.S. 46:2172. We hold further that the laws of liberative prescription of actions do not preclude the introduction of evidence of actions that are part of a pattern of actions that would meet the definition of stalking according to La. R.S. 14:40.2 or La. R.S. 14:40.3. For these reasons, we reverse the decision of the trial court and recall the injunction issued in the proceeding below.

**REVERSED AND RENDERED.**